UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT SIAM HOBSON, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Civil Action No. 14-cv-11886-ADB |
| | * |
| MICHAEL CORSINI, | * |
| | * |
| Respondent. | * |

**MEMORANDUM AND ORDER**

September 25, 2015

BURROUGHS, D.J.

## I.  INTRODUCTION

Petitioner Allah Unique-Divine Siam, formerly known as Albert Siam Hobson ("Siam"), is a Massachusetts state prisoner[1] currently serving a ten-year sentence following his conviction on charges of assault and battery of a child under the age of sixteen with the intent to rape, Mass. Gen. Laws ch. 265, § 24B, and indecent assault of a child under the age of fourteen. Mass. Gen. Laws ch. 265, § 13B. Siam, who is proceeding pro se, has filed a petition for a writ of habeas corpus challenging his conviction, pursuant to 28 U.S.C. § 2254.

Siam's habeas petition presents four grounds for relief: (1) that he was denied due process of law and a fair trial when certain "bad acts" evidence was improperly admitted at trial ("Ground One"); (2) that he was denied due process of law and a fair trial when "prior course of conduct" evidence was admitted at trial ("Ground Two"); (3) that the Commonwealth failed to comply with Massachusetts Rule of Criminal Procedure 36 regarding speedy trials ("Ground

---

[1] Siam is currently incarcerated at the Massachusetts Treatment Center in Bridgewater, Massachusetts.

Three"); and (4) that the Commonwealth violated the Interstate Agreement on Detainers in the course of his prosecution for the assault ("Ground Four"). [ECF No. 1; see also ECF No. 30.] In his Opposition to Respondent's Motion to Dismiss [ECF No. 40], Siam also argues that he was deprived of effective assistance of counsel because his appellate lawyer refused to pursue an appeal on the legal issues set forth in Ground Four of his Petition. [ECF No. 40, at 1-2.]

Respondent Michael Corsini, Superintendent of the Massachusetts Treatment Center, has moved to dismiss Siam's petition in its entirety. [ECF No. 23.] First, Respondent argues that Grounds One, Two, and Three are based on errors of state law and are therefore non-cognizable under the habeas corpus statute. Alternatively, Respondent asserts that, to the extent Grounds One and Two can be construed to raise federal claims, those claims must be dismissed, because the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent. Respondent further argues that Grounds Three and Four are subject to dismissal because they are unexhausted, and because Ground Four fails to state a claim upon which relief may be granted. Having carefully considered the parties' submissions, and construing Siam's arguments liberally because he is proceeding pro se, the Court GRANTS Respondent's Motion to Dismiss.

II.     FACTUAL AND PROCEDURAL BACKGROUND

In Commonwealth v. Hobson, 83 Mass. App. Ct. 1114, 2013 WL 656316 (Mass. App. Ct. 2013), the Massachusetts Appeals Court described the underlying facts of this case, which this Court now "supplement[s] with other record facts consistent with the [court's] findings." Yeboah–Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009) (quoting Healy v. Spencer, 453 F.3d 21, 22 (1st Cir. 2006)).

The Massachusetts Appeals Court stated the following facts relevant to Siam's first two grounds for habeas relief:[2]

> At the time of the assault, the victim, referred to as M, was eleven years old. She was living with her mother, brother (AJ), and other siblings on Queen Street in Fall River. In the summer of 2005, the defendant, who is M's father, found some of his pornographic videotapes in M's room at the Queen Street address. Angered, he called M into her room and made her watch one of the videotapes with him. After, the defendant ordered M to shower and put on a pair of stockings, and slapped her in the face when she refused. M then put on the stockings. Next, the defendant pulled his penis out of his pants and forced M to touch it. He also tried to touch her breasts. He forced M "down on the bed" and while she struggled, he inserted his penis into her vagina. The incident ended when M hit the defendant in the head with a "lava lamp." Before trial, the Commonwealth moved in limine to introduce prior acts of violence by the defendant against the children. The judge ruled that the Commonwealth only could introduce acts of violence that occurred on the day of the alleged crimes. The judge did note, however, that prior acts of violence towards the children by the defendant might become admissible on redirect to respond to the issue of why there was a delayed disclosure.
> At trial, M's mother testified that the defendant would have her wear stockings or thigh-highs during their sexual relations. The Commonwealth also had a witness describe certain pornographic videotapes in which the defendant had participated, and in which women wore stockings that were cut out in the crotch area.
> Also at trial, AJ testified as the first complaint witness. He stated that the day after the incident, M told him that "dad had tried to rape" her and that she "had hit him in the head with a lava lamp." AJ further testified that he disclosed this to his mother two years later. He stated that he delayed telling his mother because he "was just afraid, really, afraid what would happen to my dad, what would happen to me, my sister, my mom, everybody." He was cross-examined as to the two-year delay in telling his mother. On redirect, AJ was permitted to testify to the reasons for his fear. After AJ's testimony, the judge instructed the jury on the first complaint doctrine.

Hobson, 2013 WL 656316 at *1.

The appeals court affirmed Siam's convictions. In rejecting Siam's argument that the trial court erred by admitting evidence of Siam's prior acts of violence towards the children and their mother, the appeals court held that the prior instances of violence were admitted to rehabilitate

---

[2] State court "factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

the children's credibility, and to explain why the children delayed in reporting the abuse. Id. The court further held that there was no error in admitting testimony from the victim's mother that Siam made her wear stockings during their consensual sexual relations or evidence that he had other women wear similar hosiery during videotaped sexual encounters. Id. at *2. Such evidence, the court held, was admitted to corroborate the victim's testimony that Siam forced her to wear stockings on the day he sexually assaulted her. Id. The appeals court found that admitting this evidence was not erroneous or unduly prejudicial, particularly where the jury was given limiting instructions. Id. Siam petitioned the Massachusetts Supreme Judicial Court ("SJC") for further appellate review, but the SJC denied his application. See Commonwealth v. Hobson, 465 Mass. 1103 (2013).

The facts relevant to Siam's Third and Fourth grounds for habeas corpus relief are less clear, but the Court understands the following from its review of his various filings.

In October 2009, before Siam was indicted in Bristol County for the assault at issue in this case, the Suffolk County District Attorney notified Siam of pending charges against him there for rape, home invasion, larceny, assault, kidnapping, robbery, and burglary (the "Suffolk County Charges"). [ECF No. 40, Ex. 2, at 6.] At the time, Siam was incarcerated in a Bureau of Prisons ("BOP") facility in Pennsylvania, serving a 60-month sentence following a federal drug conviction in the United States District Court for the District of Massachusetts. [See ECF No. 40, Ex. 2, at 7; Criminal Docket for Case No. 05-cr-10206-NMG.] Siam requested timely disposition of the Suffolk County Charges, pursuant to the Interstate Agreement on Detainers (the "IAD"), and in November 2009, the Suffolk County District Attorney's Office lodged a detainer with the BOP, notifying it of the charges pending against Siam in Suffolk County. [See ECF No. 40, Ex. 2, at 1-3.] In December 2009, Siam was transferred from the BOP to the custody of Suffolk

County, where he was subsequently arraigned on the Suffolk County Charges. [ECF No. 40, Ex. 3.] The record before the Court does not indicate the disposition of the Suffolk County Charges.

Separate and apart from the federal charges and Suffolk County Charges, in 2008, local police began to investigate Siam for the sexual assault underlying the conviction at issue here. [ECF No. 40, Ex. 1, at 2.] Criminal charges were brought against Siam, this time by the Bristol County District Attorney (the "Bristol County Charges") and an arrest warrant issued on November 10, 2008. [Id.] Siam alleges that he filed a speedy trial motion pro se in April 2009 in connection with these charges [ECF No. 40, Addendum, at 2], but there is no other evidence of this motion in the record before this Court. Siam was indicted on the Bristol County Charges on August 21, 2009 and was arraigned on January 19, 2010. [ECF No. 24, Ex. A, at 4.] During the pendency of this criminal case, it appears that Siam remained in Suffolk County custody, but was transported to and from court in Bristol County pursuant to a series of writs of habeas corpus ad prosequendum. [ECF No. 24, Ex. A, at 5-6.] Siam alleges that no detainer was ever lodged by Bristol County to obtain formal custody over him. [ECF No. 1, at 10 ("No detainer ever filed via Fall River / Bristol County"), 13 ("I was in a designation in BOP from September 2009 w/o detainer lodged. . . .").] Other documents filed by Siam in support of his Petition appear to confirm that Bristol County did not lodge a detainer.

A jury convicted Siam on the Bristol County Charges on April 2, 2010. [ECF No. 24, Ex. A, at 7.]

**III.   LEGAL STANDARD**

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). AEDPA permits federal

courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is considered an unreasonable application of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 407. An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003). Finally, a state court judgment is based on an unreasonable determination of the facts if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

This limited review of state court decisions under the AEDPA "applies, however, only to a 'claim that was adjudicated on the merits in State court proceedings.' If the federal claim was never addressed by the state court, federal review is de novo." Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007) (citing Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (holding that federal courts "can hardly defer to the state court on an issue that the state court did not address")); see also Cooper v. Bergeron, 778 F.3d 294, 299 (1st Cir. 2015) ("AEDPA constraints do not apply

where a state court decision does not resolve a federal claim that was presented to it, and a habeas court will afford de novo review to the claim.").

## IV. DISCUSSION

### A. Grounds One and Two: Admission of Bad Acts and Course of Conduct Evidence

In Grounds One and Two of his petition, Siam argues that the trial court improperly admitted certain evidence. In Ground One Siam alleges that he was denied "due process and a fair trial when legal behavior [was] admitted to demonstrate bad character under the same or more lenient standards as bad acts or uncharged criminal behavior." [ECF No. 18, at 1.] In Ground Two, he alleges that "[a]dmittance of defendant[']s course of conduct to demonstrate his course of conduct is circular reasoning that deprives a defendant of due process and a fair trial." [Id.] Respondent argues that Grounds One and Two of Siam's Petition must be dismissed because they solely raise issues of state evidentiary law, which are not cognizable claims in a federal habeas corpus proceeding under 28 U.S.C. § 2254. Respondent further avers that, even if Siam's petition raised federal claims, he failed to exhaust these arguments in the Massachusetts appellate courts. Finally, Respondent argues that even assuming this Court were to construe Siam's petition to raise federal claims, and find that he exhausted those claims, his petition nonetheless fails to state a claim on which relief can be granted.

After carefully reviewing Siam's petition, the state court appellate briefs, and the parties' submissions in this case, the Court construes Siam's petition to raise a federal due process claim, and finds that this claim was exhausted in the state courts. However, because the Court agrees with Respondent that Siam's due process claims fail to state a claim, Grounds One and Two of his petition are dismissed.

### 1. The Court construes Siam's petition to raise federal due process claims and finds that these claims were exhausted.

7

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam)). "Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006). Although the admissibility of evidence is a question of state law, "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief." Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011).

In both his original petition [ECF No. 1] and in his supplemental pleading [ECF No. 18 (responding to Respondent's Motion for a More Definite Statement, ECF No. 15)], Siam argues that the trial court's erroneous evidentiary rulings deprived him of due process and a fair trial. Even though Siam did not expressly invoke the United States Constitution, or label Grounds One and Two as implicating a "federal" due process claim, the Court, construing Siam's filings liberally as he is proceeding pro se, finds that he has adequately alleged a federal due process claim. See, e.g., Erickson v. Pardus, 551 U.S. 89, 93 (2007).

Further, the Court finds that Siam exhausted this due-process claim in his state court appellate proceedings. A federal court may not grant a petition for habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A petitioner does not satisfy the exhaustion requirement "by presenting the state courts only with the facts necessary to state a claim for relief," Gray v. Netherland, 518 U.S. 152, 163 (1996); rather, the specific constitutional right allegedly violated must also be identified. Picard v. Connor, 404 U.S. 270, 275 (1971) (stating that exhaustion requirement is "designed to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners'

8

federal rights"). A petitioner "can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim, the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004).

Although Siam raised state law issues before the state appellate court, he also adequately raised federal constitutional claims. [See ECF No. 24, Ex. B, at 3 (citing to fair trial and due process provisions in headings in Table of Contents of brief to Massachusetts Appeals Court), 35 (invoking relevant federal Constitutional provisions), 41 (same); Ex. E, at 5 (setting forth arguments for violations of fair trial and due process rights in Application for Further Appellate Review).] This is not an instance where a stray reference to a "fair trial" was all that connected a claim of state law error to the federal constitution. See Coningford, 640 F.3d at 482-83 (holding that "the conclusory assertion that the challenged evidence rendered his trial unfair was not enough to transmogrify his garden-variety claim of evidentiary error into the functional equivalent of a claim of constitutional magnitude"). Thus, the Court rejects Respondent's contention that "the arguments regarding the admission of evidence at trial were never anything other than arguments about the admission of evidence under state law" [ECF No. 24, at 10-11], and finds that Siam has exhausted the two interrelated claims alleged in Grounds One and Two.

### 2. The Court dismisses Siam's evidentiary claims for failing to state claims upon which relief can be granted.

Respondent next asserts that even if Siam raised and exhausted federal claims, the two evidentiary claims must be dismissed because Siam has failed to state claims for habeas relief. Respondent argues that because the Massachusetts Appeals Court addressed Siam's evidentiary claims on their merits, Siam's claim must be dismissed because the decision was neither contrary to nor an unreasonable application of Supreme Court precedent. Although the state court, in

reviewing Grounds One and Two, determined that no state evidentiary error occurred without explicitly addressing the federal constitutional issues raised by Siam in his briefs, the Court nonetheless applies the highly deferential standard of review set forth in the AEDPA because the relevant evidentiary issue was "adjudicated on the merits" by the state court. See Hodge v. Mendonsa, 739 F.3d 34, 41 (1st Cir. 2013) ("[W]here 'the state court's holding squarely addressed the merits' of overlapping state and federal claims, 'it would elevate form over substance to impose some sort of requirement that busy state judges provide case citations to federal law . . . before federal courts will give deference to state court reasoning.'") (quoting Zuluaga v. Spencer, 585 F.3d 27, 31 (1st Cir. 2009)); Perkins v. Russo, 586 F.3d 115 (1st Cir. 2009) ("A threshold question, however, is whether the relevant issue was 'adjudicated on the merits' by the state court. . . . If so, the AEDPA deferential standards apply."). Here, the Massachusetts Appeals Court adjudicated Siam's evidentiary challenges on their merits, and rejected his contention that the evidence at issue was irrelevant or unduly prejudicial. Hobson, 2013 WL 656316, at *1-2.

With respect to Ground One and consistent with the AEDPA, petitioner has not identified any "clearly established federal law" regarding the introduction of "bad acts" evidence that was contrary to, or unreasonably applied in, the Massachusetts Appeals Court's decision. As the First Circuit has indicated, the Supreme Court has "expressly declined to determine 'whether a state law would violate the Due Process Clause if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.'" Coningford, 640 F.3d at 484-85 (quoting Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)). In Coningford, where a similar habeas petition was dismissed, the First Circuit held that in the absence of such clearly established federal law, "the broader fair-trial principle is the beacon by which we must steer." Id. at 484-485. Where the past

bad acts were dated and potentially prejudicial but also relevant and probative of the crime charged, the First Circuit held that "it [was] nose-on-the-face plain that the state court's approval of the introduction of the prior bad acts evidence . . . whether or not an unarguably correct evidentiary ruling, was well within the universe of plausible evidentiary rulings." Id. at 485.

As in Coningford, the Court here finds that the trial court's decision to admit the challenged evidence of past "bad acts" was well within the realm of plausible evidentiary rulings. As the Massachusetts Appeals Court held, the evidence of Siam's past violence towards his children was relevant to rehabilitate the children's credibility, help explain their fear of Siam, and account for the passage of time between the assault and the children's report. See Hobson, 2013 WL 656316, at *1 & n.2. Accordingly, under the AEDPA's deferential standard, Respondent's Motion to Dismiss Ground One is granted.

Likewise, the "circular" reasoning Siam challenges in Ground Two—admitting course of conduct evidence to establish a course of conduct—is a firmly established means of proof. Both Massachusetts and the Federal Rules of Evidence provide that evidence of a defendant's past conduct, legal or otherwise, can be admitted to show the defendant's conformance therewith in the course of the offense charged. See, e.g., Commonwealth v. Barrett, 418 Mass. 788, 794-95 (1994); Fed. R. Evid. 406. Courts must, of course, be very careful not to admit evidence that primarily acts to show a defendant's propensity to commit bad acts, see, e.g., Old Chief v. United States, 519 U.S. 172, 180-81 (1997), but admitting evidence showing that a defendant acted in a certain distinctive way at times other than during the course of the offense charged is generally permissible. Petitioner has not identified, and the Court has not found, any clearly established federal law regarding the introduction of course of conduct evidence that was contrary to, or

unreasonably applied in, the Massachusetts Appeals Court's decision. Accordingly, Ground Two is dismissed as well.[3]

### B. Ground Three: Violation of Massachusetts Criminal Procedure Rule 36

Siam next claims a violation of a Massachusetts Rule of Criminal Procedure 36, stating only that:

> In Mass. Federal Marshal's custody and Federal Bureau of Prison March 2006–December 2009. Suffolk Superior Court and Boston Police brought me into Suffolk Superior Court November 21, 2008 via U.S. Marshals via writ. Filed Rule 36 w/ Fall River District Court. No detainer ever filed via Fall River / Bristol County.

[ECF No. 1, at 10.] Respondent argues that Ground Three must be dismissed because it alleges only a violation of state law, which is not cognizable under § 2254, and separately, because the claim was not presented to the Massachusetts Appeals Court, and is thus unexhausted. [ECF No. 24, at 13-14.]

Respondent is correct that a claim premised on an allegedly improper ruling under a Massachusetts procedural rule does not, without more, entitle a petitioner to habeas corpus relief. Federal habeas protections encompass only persons in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because a Rule 36 violation is a purely state law claim, habeas relief is not available. See Martin v. Roden, No. 12-10312-RWZ, 2013 WL 753485, at *1 (D. Mass. Feb. 28, 2013) (citing 28 U.S.C. § 2241(c)(3)) (holding that since a Rule 36 claim "depends solely on the correct interpretation of Rule 36 of the

---

[3] The Court notes, in light of the arguments presented, that because the state court's decisions were not "so arbitrary and capricious as to constitute an independent due process violation," both Grounds One and Two would be dismissed under de novo review as well. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Massachusetts Rules of Criminal Procedure[,] Petitioner . . . cannot obtain federal habeas relief on this claim"). Respondent's Motion to Dismiss is therefore granted as to Ground Three.[4]

### C. Ground Four: Violation of the Interstate Agreement on Detainers

In Ground Four of his Petition, Siam alleges that he is in custody in violation of federal law, by virtue of the Commonwealth's failure to comply with the IAD. Respondent asserts that any IAD claim has not been exhausted and is, further, without merit. For the reasons set forth below, the Court finds no violation of the IAD. The Court therefore grants Respondent's Motion to Dismiss as to Ground Four.

The IAD requires that a jurisdiction that lodges a detainer based upon untried charges, against a person serving a term of imprisonment in another jurisdiction, bring that person to trial within 180 days if the prisoner gives appropriate notice and demands a final disposition of the underlying charges. See IAD, Art. III(a)-(b). The IAD further provides that where a prisoner has not demanded a speedy disposition of the underlying charges, but is nevertheless taken into temporary custody by the receiving state, the prisoner must be brought to trial within 120 days of his arrival into the receiving jurisdiction. Id. at Art. IV(c). Finally, after a detainer has been lodged and a prisoner taken into custody by the demanding state, the demanding state must fully adjudicate the charges for which the detainer was filed before returning the prisoner to the original custodial jurisdiction. Id. at Art. III(d); Art. IV(e).

---

[4] Even if the Court were to construe Siam's petition as invoking not only Rule 36, but also his related federal constitutional Sixth Amendment right to a speedy trial, it would appear that Siam failed to exhaust this claim in the state courts. No Sixth Amendment speedy trial claim was presented to the Massachusetts Appeals Court or in his Application for Further Appellate Review. An unexhausted claim generally must be dismissed. 28 U.S.C. § 2254(b)-(c); Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997).

It is not clear from the record or Siam's petition how he alleges that the IAD was violated. "The IAD only applies to prisoners against whom detainers have been filed." United States v. Gouse, 950 F. Supp. 2d 355, 359 (D.R.I. 2013) (citing United States v. Dowdell, 595 F.3d 50, 63 (1st Cir. 2010)), aff'd, 2015 WL 4979268 (1st Cir. Aug. 21, 2015). As Siam repeatedly asserts, it does not appear that Bristol County ever filed a detainer and that he was instead moved around based on writs. [See ECF No. 1, at 10, 13.] A writ is not a detainer for purposes of the IAD and does not trigger the terms of the IAD. Gouse, 950 F. Supp. 2d at 359 (citing United States v. Casas, 425 F.3d 23, 67 (1st Cir. 2005)). Because a detainer was never filed by Bristol County, Bristol County was not subject to the terms of the IAD. Accordingly, Siam's claim that the IAD was violated must fail.

Even if there were a violation of the IAD, Siam would not be entitled to relief, because the First Circuit has held that violations of the IAD are non-cognizable in federal habeas proceedings. See Cross v. Cunningham, 87 F.3d 586, 587 (1st Cir. 1996) ("Even assuming arguendo that New Hampshire violated the IAD—a point we need not decide—the district court correctly ruled that this statutory claim is not cognizable under section 2254."). As the First Circuit has explained, "nonconstitutional claims can be raised on habeas only if the alleged error results in 'a complete miscarriage of justice.'" Id. at 587 (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Being incarcerated by virtue of a state's noncompliance with the IAD is not a sufficient miscarriage of justice to warrant habeas corpus relief. Id. Because "[t]he IAD provision at issue here has nothing to do with securing a fair trial, and [the petitioner] makes no claim that the alleged IAD violation actually impaired his ability to prepare a defense or to prosecute his appeal," Siam cannot satisfy the "complete miscarriage of justice" standard, and

14

habeas corpus relief would therefore be unavailable even if there had been a violation of the IAD. Id. Accordingly, his IAD claim is also dismissed.

### D. Effective Assistance of Counsel

Finally, to the extent Siam seeks to raise an ineffective assistance of counsel claim in his Opposition to Respondent's Motion to Dismiss [ECF No. 40, at 1-2], that claim is denied. Siam argues, for the first time in his opposition brief, that he was denied effective assistance of counsel because his counsel refused to raise his IAD claim in his direct appeal. As there was no IAD claim of merit (because Bristol County did not file a detainer), Siam was not denied the effective assistance of counsel by his attorney's decision not to present that claim to the state appellate courts. In other words, Siam cannot possibly show the requisite prejudice required to make out a cognizable Sixth Amendment claim. See Strickland v. Washington, 466 U.S. 668, 692 (1984).

### V. CONCLUSION

For the foregoing reasons, the Respondent's Motion to Dismiss [ECF No. 23] is hereby GRANTED.

**SO ORDERED.**

Dated: September 25, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE